# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00516-CR

**Anthony Craig Mathis, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT NO. 66688, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## **O P I N I O N**

We withdraw our opinion and judgment dated December 18, 2013, substitute the following opinion and judgment in their place, and deny the motion for rehearing.

A jury convicted Anthony Craig Mathis of sexual assault. *See* Tex. Penal Code § 22.011. Mathis elected to have the trial court assess punishment. *See* Tex. Code Crim. Proc. art. 37.07(b). He pled true to enhancement paragraphs in the indictment, and the court assessed his punishment at confinement for life in the Texas Department of Criminal Justice. *See* Tex. Penal Code §§ 12.33, 12.42(d). In a single point of error on appeal, Mathis complains that the trial court erred in denying his request for an instruction in the jury charge on the lesser-included offense of assault. Finding no error, we affirm the trial court's judgment of conviction.

## BACKGROUND

The jury heard evidence that in January 2010 Mathis and the victim, Tracy Shores, had been involved in a romantic relationship for approximately one year (excluding a period where the two broke up for about five months) but were not dating each other exclusively. Shores described their relationship as romantic but not committed; while they had had sexual relations five or six times, both were free to date other people. On the night of January 28, 2010, Shores was at the house of a male friend when she received a phone call from Mathis informing her that he was waiting for her at her house. She was surprised by this because the two had no plans to meet that night. However, because her two sons were there, she left her friend's house and returned home. When she arrived, she found Mathis seated in his car. He seemed intoxicated and started asking her where she had been and who she had been with. She invited him inside, and he spent the night. Although they shared a bed, they did not engage in any sexual activity.

The next morning when Shores got up to take her children to school, Mathis began questioning her again about her whereabouts the night before, calling her a derogatory name when she failed to answer to his satisfaction. When she returned home after taking her sons to school, Shores got undressed and sat on the edge of the bed, intending to get back into bed to sleep some more. She asked Mathis to refrain from calling her derogatory names in front of her children. In response, Mathis began demanding once again to know where she had been and who she had been with the night before. He became more and more upset when she did not adequately respond. To avoid the confrontation, Shores went into her kitchen, but Mathis followed, shadowing her movements around the kitchen. Shores became afraid and wanted to leave the house but Mathis

2

prevented her from leaving by blocking the back door. As she tried to maneuver around him, he grabbed her by the hair, grabbed her arms, and forced her back to the bedroom. He then forced her onto the bed into a position with her head down, chin against her chest, and her legs up, knees to her chest, so that she could not breathe. He continued calling her names and demanding that she provide details about who she was with and what they were doing when he had called the night before. Shores eventually disclosed that she was with her friend and told Mathis that they were having sex when he called. She testified that she told him this because Mathis got more and more upset if she said anything contrary to what he wanted to hear. Mathis called her derogatory names and demanded details about what sexual activities they engaged in.

At one point, Shores attempted to run into the bathroom to escape, but Mathis followed, grabbed her feet, pulled her to the floor, and dragged her back to the bedroom. Shores struggled to resist, believing that if he got her back into the bedroom she was "not going to come back out." Once in the bedroom again, Mathis forced Shores back into the position where she could not breathe. He continued to interrogate her and she again told him what he wanted to hear, afraid that the situation would worsen if she did not. Mathis began striking Shores on the head and face with an open hand, "hit[ting] her good." He then started taking his clothes off, telling Shores that she was going to stay in her house and do whatever he wanted, including engaging in certain sexual acts. He threatened that if she did not, he would "kick her out the door." He also impliedly threatened her and her children by asking her who he would hit if he shot through her window.

Mathis then told Shores that she was going to "suck [his] dick," calling her a derogatory name and continuing to strike her face as he made his demand. He then forced her to

3

perform oral sex on him as he hit her and instructed her how he wanted it done. Mathis stopped her in order to have vaginal intercourse with her, forcing her onto her stomach on the bed and penetrating her from behind. He ejaculated during intercourse and then again forced Shores to perform oral sex on him. Shores testified that at no time did she consent to engaging in any sexual activity with Mathis that day. She said she was afraid to tell him no and testified that she complied with his demands because she feared he would hurt her badly if she refused.

After he was finished, Mathis laid down beside Shores on the bed. She then told him that her cousin was coming by and that she needed to call her to tell her not to come. When Mathis allowed her to go into the kitchen to make the call, Shores grabbed her robe and her cell phone and ran out the back door. She ran next door, barefoot, clad only in her open robe, as she called 911. No one answered her knock at her neighbor's house, so she ran across the street while talking on the phone to the 911 operator. Mathis pursued her.

At trial, Allen Curl, the neighbor across the street, testified that on the morning of January 29, 2010, he was at home watching television with his front door open when he saw his neighbor from across the street running up his driveway. She was barefoot and wearing only a thin nightgown or housecoat that was wide open in the front. Behind Shores, Curl saw a man he had never seen before "double timing it" after her. When the man saw Curl at his door, he turned, got into his car, and drove off. Curl described Shores as "real nervous," "real panicky," and "afraid of something." He knew she was "real upset" because she was shaking and crying. Curl was unable

4

to see to get the numbers off the license plate of Mathis's car, as Shores requested, but Shores was able to give the 911 operator a partial number.[1]

After Mathis drove off, Shores went back across the street to her house where she finished her 911 call and stood in her carport until the police arrived. The responding officers found Shores crying and upset and complaining of pain. In addition, they observed swelling on the left side of her face. They called for an ambulance to take Shores to the hospital for a sexual assault examination and to check for injuries.

At the hospital, Shores was examined by sexual assault nurse examiner, Debra Kleypas. During her examination of Shores, the nurse found soreness on her head, cheeks, neck, rib cage, and upper leg—injuries consistent with the events Shores described. Kleypas testified that she found no injuries or damage during the genital examination, but that she did not expect to find such given Shores's medical and childbirth history. She testified that such negative findings are common in a mature woman with a history like that of Shores and are not inconsistent with sexual assault. The nurse took a number of swabs from Shores's genitals, mouth, and anal area for evidence collection because Shores had indicated that Mathis had ejaculated.

Those swabs, along with samples collected by police from the cheeks of Mathis, were submitted to the Texas Department of Public Safety Laboratory for DNA testing. The forensic

---

[1] One of the police officers dispatched in response to Shores's 911 call testified that he encountered a car matching the description Shores gave, including the partial license plate number she provided, within five blocks of Shores's house speeding away from the area. The officer activated his lights and pursued the car. After catching up to the car, the officer activated his siren in addition to his already flashing lights. The driver still did not stop, but continued driving for an additional ten blocks and only stopped after pulling into a residence. Mathis was apprehended as the driver of that car.

5

analyst from the lab who performed the DNA analysis testified that she detected semen on the vaginal swab. Based on a comparison of DNA profiles, Mathis could not be excluded as the contributor to the single source DNA profile from the sperm cell fraction of that semen.

In addition to Shores, her neighbor, the police officers who responded to Shores's 911 call that night, the sexual assault nurse examiner, and the DNA analyst, the State also called the officers involved in the subsequent investigation. The defense called one witness, the male friend Shores was with when Mathis called her. Mathis did not testify. After deliberating for 29 minutes, the jury found Mathis guilty of sexual assault as charged in the indictment.

Mathis elected to have the trial court assess his punishment. He pled true to the enhancement paragraphs of the indictment alleging two prior sequential felony convictions for distribution of cocaine and tampering with physical evidence. The trial court ordered a pre-sentence investigation and reset the case for sentencing. At the subsequent punishment hearing, Mathis presented the testimony and letters of family members and friends attesting to his good character. The State presented two additional witnesses who testified about an extraneous aggravated assault Mathis perpetrated against them. The trial court found the enhancement paragraphs of the indictment to be true and, pursuant to the habitual offender punishment provision of the Penal Code, *see id.* § 12.42(d) (providing that at trial of felony offense other than unaggravated state jail felony, defendant shall be punished by imprisonment for life or any term not more than 99 years or less than 25 years upon proof of two previous sequential felony convictions), assessed his punishment at confinement for life in the penitentiary. Mathis appeals his conviction.

6

**DISCUSSION**

In his sole point of error, Mathis argues that the trial court erred when it failed to instruct the jury on the lesser-included offense of assault. At trial, Mathis requested that the jury be instructed on "assault," without referencing which particular type of assault.[2] From the context of his argument in the charge conference, it appears he was arguing for an instruction on assault causing bodily injury. *See id.* § 22.01(a)(1).

Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence at trial supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

The determination of whether an offense is a lesser-included offense is a question of law and does not depend on the evidence to be produced at trial. *Rice*, 333 S.W.3d at 144; *Hall*, 225 S.W.3d at 535. The inquiry is whether the offense requested is included within the proof necessary to establish the offense charged. *Rice*, 333 S.W.3d at 144; *Hall*, 225 S.W.3d at 531; *see* Tex. Code Crim. Proc. art. 37.09(1) ("An offense is a lesser-included offense if it is established by

---

[2] The assault statute sets out three separate and distinct assaultive crimes: bodily-injury assault, assault by threat, and offensive-contact assault. *See* Tex. Penal Code § 22.01(a)(1)–(3); *Landrian v. State*, 268 S.W.3d 532, 536, 540 (Tex. Crim. App. 2008).

7

proof of the same or less than all the facts required to establish the commission of the offense charged."). As the Court of Criminal Appeals has explained:

> An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Rice*, 333 S.W.3d at 144; *see Hall*, 225 S.W.3d at 535. This functional-equivalence concept "requires courts to 'examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense.'" *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010) (quoting *Farrakhan v. State*, 247 S.W.3d 720, 722–23 (Tex. Crim. App. 2008)).

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of another person, by any means, without that person's consent. Tex. Penal Code § 22.011(a)(1)(A). Such sexual assault is without consent if "the actor compels the other person to submit or participate by the use of physical force or violence." *Id.* § 22.011(b)(1). A person commits the offense of assault causing bodily injury if the person intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 22.01(a)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(8). Bodily injury is not an element of the offense of sexual assault. Assault causing bodily injury requires an additional element not required for the offense of sexual assault.

Mathis was charged with the sexual assault of Shores by causing the penetration of her sexual organ with his penis without her consent. *See id.* § 22.021(a)(1)(A). To prove the offense of assault causing bodily injury, the State would have to show that Mathis intentionally, knowingly, or recklessly caused Shores bodily injury. *See id.* § 22.01(a)(1). The element of bodily injury was not an element which the State had to prove to establish the charged offense of sexual assault.[3] Therefore, assault causing bodily injury is not established by proof of the same or less than all of the facts required to establish the charged offense of sexual assault; bodily-injury assault is not a lesser-included offense of sexual assault. *See, e.g.*, *Williams v. State*, No. 02-06-00454-CR, 2008 WL 623805, at *1 (Tex. App.—Fort Worth Mar. 6, 2008, no pet.) (mem. op., not designated for publication) (holding that assault bodily injury is not lesser-included offense of attempted sexual assault because it requires proof of additional element of bodily injury); *White v. State*, No. 03-01-00616-CR, 2002 WL 1804893, at *3–4 (Tex. App.—Austin Aug. 8, 2002, pet. ref'd) (op., not designated for publication) (same). The first step of the lesser-included-offense analysis is not met.

In his brief, Mathis maintains that a jury could conclude from the fact that Mathis and Shores previously engaged consensual sexual intercourse during their dating relationship that they

---

[3] Although the evidence in this case showed that Shores was injured during the course of the sexual assault, the State was not *required* to prove that Shores was injured in order to secure a conviction for sexual assault. "The relevant inquiry is not what the evidence may show but what the State is required to prove to establish the charged offense." *McKithan v. State*, 324 S.W.3d 582, 593 (Tex. Crim. App. 2010); *Crippen v. State*, 368 S.W.3d 630, 632 (Tex. App.—Eastland 2012, pet. ref'd); *see, e.g.*, *Williams v. State*, No. 02-06-00454-CR, 2008 WL 623805, at *1 (Tex. App.—Fort Worth Mar. 6, 2008, no pet.) (mem. op., not designated for publication) ("The evidence in the record that Appellant inflicted bodily injury on the complainant is immaterial to our determination.").

engaged in consensual sex on this occasion. He further asserts that the jury could then have found that Mathis and Shores separately argued about Shores's involvement with Freeman which culminated in Mathis physically assaulting her. He appears to argue that because the jury could have made these findings, assault is a lesser-included offense of the sexual assault with which he was charged and thus he was entitled to the instruction on assault. However, his argument is flawed for several reasons.

First, when determining whether a requested charge constitutes a lesser-included offense, an appellate court should not consider the evidence presented at trial. *Wortham v. State*, 412 S.W.3d 552, 557 (Tex. Crim. App. 2013) (citing *Hall*, 225 S.W.3d at 535). Second, a trial court is not required to instruct a jury on a lesser-included offense where the conduct establishing the lesser offense is not "included" within the conduct charged; i.e. within the facts required to prove the charged offense. *Irving v. State*, 176 S.W.3d 842, 846 (Tex. Crim. App. 2005) (citing *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005)). Mathis sought an instruction for assault based on his conduct of hitting Shores during his interrogation of her (when he repeatedly questioned her about her involvement with Freeman) or when, as he maintains, he struck her when he learned that she had sex with Freeman. This conduct of hitting or striking Shores is not the same conduct alleged in the indictment: the penetration of Shores's sexual organ without her consent. Because the conduct that Mathis relies on was not included within the conduct charged in the indictment, the trial court did not err in failing to give the requested lesser-included offense instruction.

In his reply brief, Mathis asserts that under a functional-equivalence analysis the act of penetrating the sexual organ without consent itself supports an inference of bodily injury or, at

10

the very least, constitutes an "offensive touching."[4]  However, the issue is not whether bodily-injury assault or offensive-contact assault may be deduced or inferred from the indictment's allegation that Mathis penetrated Shores's sexual organ without her consent, but whether this allegation in the indictment is functionally equivalent to an allegation of bodily-injury assault or to an allegation of offensive-contact assault—i.e., whether, in establishing the allegation of penetration of the sexual organ without consent, the State was required to prove bodily-injury assault or offensive-contact assault. *See McKithan*, 324 S.W.3d at 589–90.  An allegation that a sexual assault is without consent due to the use of physical force or violence is not functionally equivalent to an allegation of bodily injury or an allegation of physical contact. *See id.* at 590.  Thus, the State is not required to prove bodily injury or physical contact to establish "physical force or violence" in a sexual assault. *See id.* Here, because the State was not required to prove either bodily injury or offensive touching to demonstrate that Mathis penetrated Shores's sexual organ without her consent by using physical force or violence, we conclude that, contrary to Mathis's assertion, the penetration of Shores's sexual organ without her consent is not the functional equivalent of bodily injury or offensive contact.

---

[4] To establish an offensive-touching assault, a person must intentionally or knowingly cause physical contact with another when the person knows or should reasonably believe that the other will consider the contact offensive or provocative. *See* Tex. Penal Code § 22.01(a)(3).  Mathis does not explicitly reference offensive-contact assault, but avers "The whole rationale behind outlawing sexual assault is that [penetrating the female sexual organ without the complainant's consent] is precisely the type of conduct that is regarded as offensive or provocative."  Further, he suggests that the definition of bodily injury is so broad that it includes even merely offensive touching.  As the Penal Code explicitly defines bodily injury, we reject that argument but, due to Mathis's averment, include the offense of offensive-contact assault in our analysis.

Moreover, even if Mathis's contention that penetration of the sexual organ without consent is the functional equivalent of bodily injury or an offensive touching were true, he would still not be entitled the requested instruction.

The second step of the lesser-included-offense analysis determines if there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty *only* of the lesser-included offense. *Rice*, 333 S.W.3d at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008).

Even if the act of penetrating Shores's sexual organ without her consent constituted evidence of bodily injury[5] or an offensive touching, this evidence does not establish the lesser-included offense as a valid, rational alternative to sexual assault. No rational jury could find that Mathis was guilty *only* of the lesser offense of bodily-injury assault (or offensive-contact assault) when the very evidence establishing that assault—the penetration of Shores's sexual organ without her consent—constitutes proof of the greater offense of sexual assault. If Mathis committed the offense of bodily-injury assault (or offensive-contact assault) by penetrating Shores's sexual organ without her consent, as he asserts in his reply brief, he necessarily committed the offense of sexual assault as alleged in the indictment. This evidence of penetration without consent would be proof

---

[5] We note that two of our sister courts of appeals have held that evidence of penetration does not constitute evidence of bodily injury. *See Crippen*, 368 S.W.3d at 632; *Wilson v. State*, Nos. 12-02-00042-CR & 12-02-00043-CR, 2003 WL 21771766, at *7 (Tex. App.—Tyler July 31, 2003, no pet.) (mem. op., not designated for publication).

12

of *both* the greater offense and the lesser offense and, thus, would not enable a rational jury to conclude that Mathis was guilty *only* of the lesser-included offense of bodily-injury assault or offensive-contact assault.

Also in his reply brief, Mathis argues that the evidence supported assault as a valid, rational alternative to the charged sexual assault offense because "a lesser included offense may be raised if . . . the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater [offense]." *See Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996). He maintains that the lack of physical evidence of trauma to Shores's genitals "can be interpreted one of two ways: (1) a sexual assault did not occur, [or] (2) a sexual assault did occur, but injury did not because of several births." He argues the first alternative negates the lack of consent element of the greater sexual assault offense. However, negating the lack of consent element of sexual assault simply results in consensual sexual intercourse. Evidence demonstrating consensual sex does not permit the jury to rationally find that, if Mathis was guilty, he was guilty only of assault. Rather, such evidence simply fails to prove the sexual assault alleged. Thus, the interpretation Mathis relies on to support his requested lesser-included-offense charge supports only an acquittal, not a conviction for the lesser-included offense of assault. *See Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) (evidence that defendant committed no offense is not adequate to raise the issue of lesser-included offense).

13

**CONCLUSION**

Bodily-injury assault requires proof that Mathis caused bodily injury to Shores; offensive-contact assault requires proof of physical contact that Mathis knew or should have reasonably believed that Shores would regard as offensive or provocative. *See* Tex. Penal Code § 22.01(a)(1), (3). Neither of these elements is within the elements of the sexual assault charged in the indictment. Consequently, these assault offenses are not lesser-included offenses of sexual assault.

Mathis's reliance on the conduct of striking Shores separate from the conduct of penetrating her sexual organ without her consent does not entitle him to the lesser-included instruction sought because it relies on the evidence presented at trial. More importantly, such conduct is not included within the conduct charged in the indictment.

Furthermore, even construing penetration of the sexual organ without consent to be the functional equivalent of bodily injury or an offensive touching, evidence of such an assault would simultaneously constitute evidence of the greater offense of sexual assault alleged. Thus, such evidence would not enable a rational jury to conclude that Mathis was guilty only of the lesser-included offense of either bodily-injury assault or offensive-contact assault.

Finally, Mathis's assertion that the evidence allows for alternative interpretations does not support the lesser offense as a valid rational alternative because neither interpretation of the evidence permits the jury to rationally find that, if Mathis was guilty, he was guilty only of assault. An interpretation allowing for evidence demonstrating consensual sexual intercourse does not

14

support assault as a valid rational alternative, it simply shows that Mathis did not commit the sexual assault offense alleged.

Mathis was not entitled to an instruction on assault. The trial court did not err by denying the requested jury instruction. We overrule Mathis's sole point of error and affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed on Motion for Rehearing

Filed:   August 21, 2014

Publish

15