# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00762-CR

---

**Alexander Ulysses Chabrier, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 274TH DISTRICT COURT OF HAYS COUNTY**
**NO. CR-16-0606, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING**

---

## O P I N I O N

A jury convicted appellant Alexander Ulysses Chabrier of the offense of attempted sexual assault and assessed punishment at five years' imprisonment with a recommendation that imposition of the sentence be suspended. *See* Tex. Penal Code §§ 15.01(a), 22.011(a)(1). The district court rendered judgment on the verdict and placed Chabrier on community supervision for ten years. In two issues on appeal, Chabrier asserts that the district court erred in refusing to charge the jury on offensive-contact assault, which he contends is a lesser-included offense of sexual assault, and argues in the alternative that if offensive-contact assault is not a lesser-included offense of sexual assault, then trial counsel was ineffective in "planning his entire trial strategy around obtaining said charge." We will affirm the district court's judgment.

## BACKGROUND

The State charged Chabrier with sexually assaulting H.H., a student at Texas State University. H.H. testified that on the night of August 19, 2015, she was watching a movie at her apartment with her roommate, Erin Ratcliffe, and Ratcliffe's friend, Chabrier. All three were drinking. At approximately 2:00 a.m., H.H. went to her bedroom and fell asleep. Later, she awoke with her pants and underwear pulled down to her knees, while Chabrier was touching her vagina with his fingers and "taking pictures" of her with his iPhone. H.H. demanded to see the photos, which were black and showed nothing visible. H.H. told Chabrier "to get rid of the pictures," and he deleted them. H.H. then told Chabrier repeatedly to leave her bedroom, while he begged her not to say anything to Ratcliffe. Chabrier left the bedroom eventually, and H.H., who was now sobbing uncontrollably, used her phone to call Ratcliffe for help. Shortly thereafter, Ratcliffe entered H.H.'s bedroom, was told by H.H. what Chabrier had done, and went into the living room to confront him. Ratcliffe testified that Chabrier "apologized profusely and kept on saying, 'I'm sorry. I'm sorry. I'm drunk.'" Chabrier then left the apartment.

Ratcliffe spoke further with H.H. after Chabrier left. Ratcliffe testified that her recollection of the conversation was "very hazy," but she recalled that H.H. had told her that "it was just an attempt—like, he had taken down or tried to pull off her pants and then maybe, like, touched her upper stomach, belly area and then [H.H.] woke up and was like, 'No.'" Later that morning, Ratcliffe took H.H. to the Hays County Jail, where H.H. was interviewed by Officer Dustin Slaughter of the San Marcos Police Department. H.H. told Officer Slaughter that she was not certain if Chabrier had penetrated her digitally, although she would later indicate in her written statement to the police, in a follow-up interview with another officer, and in her trial testimony that she had felt at least one of Chabrier's fingers inside her vagina.

2

Chabrier, who testified in his defense, characterized H.H.'s testimony as "absolutely false." Chabrier's version of events was that he had awakened that night needing to go to the bathroom, was "very disoriented and very drunk," and "stumbled" and "fell" into H.H.'s bedroom by mistake. Once inside H.H.'s room, Chabrier reached for his iPhone to turn on its "flashlight" feature but instead clicked accidentally on his phone's camera, resulting in the photos. He denied touching H.H. in any manner.

At the charge conference, defense counsel requested an instruction on the Class C misdemeanor offense of offensive-contact assault, which counsel argued was a lesser-included offense of sexual assault. The district court denied Chabrier's request but, on the State's request, included an instruction on the lesser-included offense of attempted sexual assault. The jury convicted Chabrier of the attempt offense. This appeal followed.

## ANALYSIS

### Lesser-included offense instruction

In his first issue, Chabrier asserts that he was entitled to an instruction on offensive-contact assault. He argues that it is a lesser-included offense of sexual assault as charged in the indictment and that the district court erred in concluding otherwise.

#### *Standard of review*

We review a trial court's refusal to give a requested instruction on a lesser-included offense using the same standard for charge error generally. *See Braughton v. State*, 569 S.W.3d 592, 613 (Tex. Crim. App. 2018) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). First, we determine if the trial court erred in refusing the request; if so, we then review the record to determine if the defendant was harmed by the error.

3

*See id.*; *Almanza*, 686 S.W.2d at 173–74; *see also Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Sweed v. State*, 351 S.W.3d 63, 69–70 (Tex. Crim. App. 2011).

### *Analytical framework*

"An offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. art. 37.09(1). "Whether a defendant is entitled to a jury instruction on a lesser-included offense involves a two-step analysis." *Safian v. State*, 543 S.W.3d 216, 219 (Tex. Crim. App. 2018) (citing *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011)). "The first step of the lesser-included-offense analysis asks 'whether the lesser-included offense is included within the proof necessary to establish the offense charged.'" *Id*. at 219–20. "This is a question of law, and it does not depend on the evidence to be produced at trial." *Id*. at 220.

"The second step of the lesser-included-offense analysis is to determine whether there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id*. "This is a fact determination and is based on the evidence presented at trial." *State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013). "If there is evidence that raises a fact issue of whether the defendant is guilty only of the lesser offense, an instruction on the lesser-included offense is warranted, regardless of whether the evidence is weak, impeached, or contradicted." *Id*.

This case concerns the first step of the analysis. In this step, "we employ the cognate-pleading approach adopted in *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007), which requires us to compare the elements of the greater offense as pled to the statutory elements

4

of the potential lesser-included offense in the abstract." *Ex parte Castillo*, 469 S.W.3d 165, 169 (Tex. Crim. App. 2015). "[W]hen the greater offense may be committed in more than one manner, the manner alleged will determine the availability of lesser-included offenses.'" *Hall*, 225 S.W.3d at 531. "An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).

"[T]he elements of the lesser-included offense do not have to be pleaded in the indictment if they can be deduced from facts alleged in the indictment." *Meru*, 414 S.W.3d at 162. "When there are allegations in the indictment that are not identical to the elements of the lesser offense, a court should apply the functional-equivalence test to determine whether elements of the lesser offense are functionally the same or less than those required to prove the charged offense." *Safian*, 543 S.W.3d at 220 (citing *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012)). "An element of the lesser-included offense is functionally equivalent to an allegation in the charged greater offense if the statutory elements of the lesser offense can be deduced from the elements and descriptive averments in the indictment for the charged greater offense." *Id*. (citing *McKithan v. State*, 324 S.W.3d 582, 588–89 (Tex. Crim. App. 2010)).

5

*Comparing sexual assault as alleged in the indictment to offensive-contact assault*

As alleged in the indictment, Chabrier was charged with intentionally or knowingly causing the penetration of H.H.'s sexual organ, by his finger or object unknown to the grand jury, without the consent of H.H.[1] *See* Tex. Penal Code § 22.011(a)(1)(A). A person commits offensive-contact assault if the person intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *Id*. § 22.01(a)(3). Chabrier asserts that the last element in offensive-contact assault—"the person knows or should reasonably believe that the other will regard the contact as offensive or provocative"—is functionally equivalent to the "without consent" element in the charged sexual-assault offense.

The district court, in concluding that offensive-contact assault was not a lesser-included offense of sexual assault, relied on this Court's opinion in *Mathis v. State*, 443 S.W.3d 391 (Tex. App.—Austin 2014, no pet.). In *Mathis*, this Court considered whether two types of assault—bodily-injury assault and offensive-contact assault[2]—were lesser-included offenses of sexual assault. The defendant had been charged with intentionally or knowingly causing the

---

[1] The statutory definition of "without consent" was not included in either the indictment or the jury charge. Chabrier did not object to this omission in the court below and does not raise any complaint on appeal regarding the omission.

[2] Three types of assault are listed in the assault statute: (1) bodily-injury assault; (2) assault by threat; and (3) offensive-contact assault. Tex. Penal Code § 22.01(a)(1)–(3). During the charge conference in *Mathis*, the defendant requested an instruction on "assault" but failed to specify the type of assault to which he was referring. 443 S.W.3d 391, 396 (Tex. App.—Austin 2014, no pet.). Based on "the context of his argument in the charge conference," this Court surmised that Mathis was arguing for an instruction on bodily-injury assault. *Id*. However, Mathis's reply brief suggested that he also might have been arguing that he was entitled to an instruction on offensive-contact assault. *See id*. at 398 & n.4. Accordingly, this Court decided to "include the offense of offensive-contact assault in [its] analysis." *Id*. at 398 n.4.

penetration of the victim's sexual organ with his sexual organ without her consent. *See id.* at 397. The defendant asserted that under a "functional-equivalence analysis, the act of penetrating the sexual organ without consent itself supports an inference of bodily injury or, at the very least, constitutes an 'offensive touching.'" *Id.* at 398.

This Court disagreed, observing that "the issue is not whether bodily-injury assault or offensive-contact assault may be deduced or inferred from the indictment's allegation that Mathis penetrated [the victim's] sexual organ without her consent, but whether this allegation in the indictment is functionally equivalent to an allegation of bodily-injury assault or to an allegation of offensive-contact assault—i.e., whether, in establishing the allegation of penetration of the sexual organ without consent, the State was required to prove bodily-injury assault or offensive-contact assault." *Id.* This Court concluded that the State was not required to prove either bodily injury or offensive contact to demonstrate that the defendant penetrated the victim's sexual organ without her consent. *Id.* Therefore, "the penetration of [the victim's] sexual organ without her consent is not the functional equivalent of bodily injury or offensive contact." *Id.*

The Court of Criminal Appeals reached similar conclusions regarding offensive-contact assault in *McKithan*, *supra*, which involved two cases that the court had consolidated for review. In one case, the defendant was charged with aggravated sexual assault. 324 S.W.3d at 584. In the other case, the defendant was charged with bodily-injury assault. *Id.* at 583. In both cases, the court rejected the defendant's contention that offensive-contact assault was a lesser-included offense of the charged offense. *Id.*

In the aggravated-sexual-assault case, the defendant was charged with penetrating the victim's sexual organ with his finger and without the victim's consent, specifically "by the

7

use of physical force or violence." *Id*. at 584. The defendant sought an instruction on offensive-contact assault, arguing that the offenses "may be deduced or inferred from the indictment's 'physical force and violence' allegation." *Id*. at 589. The court disagreed, observing that the issue "is not whether . . . offensive-contact assault may be deduced or inferred from the indictment's allegation that [the defendant] used 'physical force and violence' but whether this allegation in the indictment is functionally equivalent to an allegation of . . . offensive-contact assault (i.e., whether, in establishing the 'physical force and violence' allegation in the indictment, the State was required to prove . . . offensive-contact assault)." *Id*. at 589–90. The court concluded that "the 'physical force and violence' allegation in [the defendant's] indictment is not functionally equivalent to an allegation of physical contact and that the State was not required to prove physical contact in establishing this 'physical force and violence' allegation in [the defendant's] aggravated-sexual-assault indictment." *Id*. at 590.

In the bodily-injury assault case, the defendant was charged with assaulting the victim by kicking her with his foot. *Id*. at 583–84. The defendant argued that "the element of causing bodily injury [by kicking] is legally equivalent to the complainant's regarding such contact as offensive or provocative." *Id*. at 591.

Again, the court disagreed, observing that "[t]he State was not required to prove the latter (i.e., that appellant knew or should reasonably have believed that the complainant would regard this contact as offensive) to establish the former (i.e., that appellant caused the complainant bodily injury by kicking)." *Id*. The court concluded that "[i]n establishing the charged bodily-injury-assault offense, the State was required to prove only that appellant caused the complainant bodily injury by kicking her. It is irrelevant whether the defendant knew or should have reasonably believed that the complainant would consider this contact as offensive or

8

provocative." *Id*. The court added that this was true even if the evidence demonstrated that the victim considered the kicking to be offensive or provocative: "The relevant inquiry is not what the evidence may show but what the State is required to prove to establish the charged offense. And, in [this] case, we have decided that the State was not required to prove offensive contact in establishing the charged bodily-injury-assault offense (even though the State's evidence may have shown offensive contact)." *Id*. at 593–94 (internal citations omitted).

Similar reasoning has been applied in cases where the defendant was charged with indecency with a child by sexual contact. In *Ramos v. State*, 981 S.W.2d 700 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd), the defendant was charged with touching the child's anus, genitals, and breast. *Id*. at 700–01. The defendant argued that he was entitled to an instruction on offensive-contact assault. *Id*. at 701. The court disagreed, observing that the charged indecency offense did not require proof of the "additional fact" that "the defendant knew or reasonably believed that the complainant would regard the contact as offensive or provocative at the time of the contact." *Id*. The court added, "Even though there may have been some evidence appellant knew or reasonably believed that the five-year-old complainant would regard the contact as offensive, such is immaterial" to the analysis. *Id*.; *see also Shea v. State*, 167 S.W.3d 98, 106 (Tex. App.—Waco 2005, pet. ref'd) ("The proof required to establish assault by offensive or provocative contact is different, not less, than that required to prove indecency with a child by contact."). Similarly, in *Scott v. State*, 202 S.W.3d 405, 412 (Tex. App.—Texarkana 2006, pet. ref'd), the court observed that to prove indecency with a child, the State had to demonstrate that the defendant "acted with intent to arouse or gratify the sexual desire of some person; it did not have to prove [the defendant] knew or should have reasonably believed that [the child] would regard the contact as offensive or provocative. Even though there may be

some evidence that is probative of both elements, they remain distinctive elements." *Id*. "Put another way, a defendant may be found guilty of indecency with a child regardless of whether a complainant found the conduct offensive or provocative." *Id*.

The same is true of sexual assault as alleged here. To prove that Chabrier committed sexual assault, the State was required to prove that he penetrated H.H.'s sexual organ without her consent; the State was not required to prove that Chabrier knew or should have reasonably believed that H.H. would regard the contact as offensive or provocative. In other words, Chabrier could be guilty of penetrating H.H.'s sexual organ without her consent even if there was no evidence presented as to his knowledge or belief that H.H. would regard the contact as offensive or provocative.

Following the analysis in *McKithan*, *Mathis*, and the other cases cited above, we conclude that the elements of offensive-contact assault are not "functionally the same or less than those required to prove" the charged offense of sexual assault. *See McKithan*, 324 S.W.3d at 590–91, 593–94; *Mathis*, 443 S.W.3d at 398; *Scott*, 202 S.W.3d at 412; *Ramos*, 981 S.W.2d at 701. Accordingly, the district court did not err in refusing Chabrier's request for an instruction on offensive-contact assault.

We overrule Chabrier's first issue.

**Ineffective assistance of counsel**

In his second issue, Chabrier asserts that he received ineffective assistance of counsel during trial. Specifically, he contends that if the district court was correct in refusing counsel's request for an instruction on offensive-contact assault, then counsel was deficient in "planning his entire trial strategy" around obtaining such an instruction.

10

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

The record does not support Chabrier's assertion that trial counsel "planned his entire trial strategy" around obtaining an instruction on offensive-contact assault. Throughout trial, counsel's primary theory of the case was that H.H. was lying and that no physical contact had occurred, offensive or otherwise. This theory was consistent with Chabrier's trial testimony denying that he had touched H.H. Although counsel engaged in a discussion with the venire during jury selection on the difference between penetration and contact and, at the charge conference, sought to obtain an instruction on offensive-contact assault, these efforts were an attempt to establish, in the alternative, that if the jury believed that some contact had occurred, then the contact had stopped short of penetration. We cannot conclude that pursuing alternative defensive theories in this case fell below an objective standard of reasonableness.

11

Moreover, "in the absence of evidence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined.'" *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (quoting 3 W. LaFave, et al., Criminal Procedure § 11.10(c) (2d. ed 1999)). We can imagine a strategic motivation here. By asking for an instruction on offensive-contact assault, Chabrier preserved this issue for appellate review. As one of our sister courts has observed, "We often see instances of attorneys asking for charge language not currently sanctioned as a predicate for a later appeal to reshape the law. Thus the request might well have been a matter of strategy." *Franco v. State*, No. 08-15-00254-CR, 2017 Tex. App. LEXIS 2177, at \*12 (Tex. App.—El Paso Mar. 14, 2017, no pet.) (not designated for publication). The record reflects that counsel attempted to distinguish Chabrier's case from this Court's earlier decision in *Mathis*. Although his efforts were unsuccessful, we cannot conclude that counsel was deficient for attempting to obtain an instruction that could have resulted in a more favorable outcome for his client, either at trial or on appeal.

Finally, Chabrier has failed to demonstrate prejudice, i.e., a reasonable probability that absent counsel's alleged deficiency, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "*Strickland* requires [the appellant] to establish, by a preponderance of the evidence, that the harm resulting from trial counsel's deficiency undermines the confidence in the trial's outcome." *Ex parte Parra*, 420 S.W.3d 821, 828 (Tex. Crim. App. 2013). We cannot conclude on the record here that Chabrier was harmed in any way by counsel's request for an instruction on offensive-contact assault.

We overrule Chabrier's second issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed: November 14, 2019

Publish