**Opinion issued November 20, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00045-CR

_____

**FRANK KHAMSINI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 16-DCR-074652**

---

## MEMORANDUM OPINION

A jury convicted Frank Khamsini of attempted sexual assault,[1] and the trial court assessed punishment at 10 years' confinement, suspended for 10 years' community supervision. Khamsini now challenges the sufficiency of the evidence

---

[1] *See* TEX. PENAL CODE §§ 15.01(a), 22.011(a)(1).

to support his conviction and contends that his trial counsel was ineffective. We affirm.

## Background

Khamsini and his wife, Angela, lived together in a three-bedroom apartment with their five children. The house was equipped with a camera system so that Khamsini and Angela could see their children, who often arrived home from school alone. The cameras were to ensure that the children were safe and were doing their homework.

On November 3, 2015, Khamsini and Angela were arguing. The cameras caught the incident on video. Angela confronted Khamsini about him cheating on her. Khamsini was also jealous that Angela had been spending time with a new friend in the apartment complex. The confrontation became physical when Khamsini hit Angela with a shoe and grabbed her by the throat. Khamsini then got on top of Angela and was trying to kiss her and pull at her shorts. Angela testified that she could feel his erection during the incident. Khamsini pulled Angela off the sofa by her shorts. During the interaction, Angela told Khamsini, "You are not going to f--- me, I am not Laquisha[.]" Angela testified that, unlike Khamsini's previous girlfriend, she did not like rough sex and did not want to have sex with him.

After Khamsini pulled Angela off the couch by her shorts, tearing the shorts in the process, she tried to get away, but he grabbed her again. Angela retaliated by striking Khamsini with a curtain rod. Angela's daughter then walked into the room, and Angela told her to call 911. On the 911 recording, Angela stated, "He attacked me, he's trying to rape me."

Deputy Dishman of the Fort Bend County Sheriff's Department responded to the 911 call. He found Angela to be upset, crying, and distraught. Angela gave the police the video of the incident, which the jury viewed during trial. Dishman also found that Khamsini had attempted to dispose of evidence—Angela's torn underwear—by throwing them in the trash. Dishman noticed scratches and abrasions on Angela's body, which he documented. He did not believe that a reasonable person would have believed that Angela had consented to having sex, so he arrested Khamsini.

Khamsini's defense at trial was that he and Angela had a "unique love and sex language" regarding consent. He pointed to Angela's testimony in which she acknowledged that "there were times where maybe [she] didn't want to have sex but, ultimately, [she] would consent based on further conversations that [they] would have." Khamsini argued to the jury that this pattern of fighting, followed by sex, meant that Angela had consented to sex in this instance too. He also presented evidence that, post-sexual-assault, Angela had consensual sex with Khamsini at

3

least once and that she had sent a letter to the judge, in which she stated that "she blew the situation up into something larger than it was."

Despite the differing versions of the event, the jury found Khamsini guilty of attempted sexual assault. And the trial court sentenced him to 10 years' confinement, probated for 10 years. This appeal followed.

## Sufficiency of the Evidence

Khamsini argues there is insufficient evidence that he intended to commit a sexual assault. He also challenges the credibility of Angela's testimony regarding her lack of consent and motive for involving the police.

### A. Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, "we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting our review, we defer to the factfinder to "fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 318–19). The

4

jury, as the sole judge of the facts and credibility of the witnesses, may choose to believe or disbelieve any witness or portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We presume that the jury resolved any conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

"The key question is whether the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (internal quotations omitted). And our role on appeal is "restricted to guarding against the rare occurrence when a fact finder does not act rationally." *Id.* (internal quotations omitted).

Further, in our review, we treat direct and circumstantial evidence equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### B. Governing Law

A person commits the offense of sexual assault of an adult when he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or causes the sexual organ of another person, without that

person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. TEX. PENAL CODE § 22.011(a)(1)(A)-(C). A sexual assault is without the consent of the other person if the actor compels the other person to submit or participate using physical force or violence. *Id.* § 22.011(b)(1).

A person commits attempted sexual assault if, with the intent to commit sexual assault, "he does an act amounting to more than mere preparation that tends, but fails, to effect the commission" of sexual assault. *Id.* § 15.01(a).

### C. Discussion

Khamsini contends "there was no testimony or evidence that [he] intended to have sex with Angela on the date of the incident." And "there is nothing on the records, even on the video, [that] tended to prove that [Khamsini] was preparing to have sex with Angela." In both of these issues, Khamsini claims that the State failed to prove the "intent" element of attempted sexual assault.

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

Direct evidence of the requisite culpable mental state—the mens rea of the offense—is not required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

Mens rea is almost always proven through circumstantial evidence. *Herrera v. State*, 526 S.W.3d 800, 809 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *see also Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."). "A jury may infer intent from the acts, words, and conduct of the accused, as well as from the extent of the injuries and the relative size and strength of the parties." *Herrera*, 526 S.W.3d at 809–10. Additionally, a jury may infer that a criminal defendant intended the natural consequences of his acts. *See Ruffin v. State*, 270 S.W.3d 586, 591–92 (Tex. Crim. App. 2008).

Here, there was sufficient evidence that Khamsini intended to sexually assault Angela and that he took preparatory steps to effectuate that purpose—even though he ultimately failed to complete the offense.

The jury watched the video of the incident in which Khamsini grabbed Angela by the throat, threw her down and kissed her. Angela testified that she could feel Khamsini's erection and that she told him "you are not going to f--- me." In response, Khamsini did not stop the assault. Instead, he ripped off Angela's shorts. Even though Angela hit Khamsini with a curtain rod, he did not stop the assault until her daughter walked into the room.

7

Khamsini argues that because he did not remove his own shorts, there was no "preparatory element" because "no man can perform any sexual penetration with his shorts on." But the jury necessarily concluded that by ripping Angela's shorts off, Khamsini, who had an erection at the time, intended to sexually penetrate Angela.

Khamsini also claims that "it is ridiculous to claim that a husband raped his own wife, even if the wife was resisting the sexual advances. It cannot amount to attempted rape." Under Texas law, a man can sexually assault his wife. Section 22.011 of the Penal Code defines sexual assault as occurring when a person "intentionally or knowingly causes the penetration . . . of another person . . .without that person's consent," and it applies to spouses. *See, e.g.*, *Ibarra v. State*, Nos. 01-21-00694-CR and 01-24-00695-CR, 2023 WL 3183323, at *5 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet) (holding evidence sufficient to prove that appellant sexually assaulted wife) (mem. op., not designated for publication).

While the Common Law of England historically recognized a "spousal exemption" to the crime of rape and provided that a "husband cannot be guilty of a rape committed by himself upon his lawful wife,"[2] this has not been the law in

---

[2] *See* Lalenya Weintraub Siegel, *The Marital Rape Exemption: Evolution to Extinction*, 43 CLEV. ST. L. REV. 351, 3 (1995) (quoting Sir Matthew Hale, THE HISTORY OF THE PLEAS OF THE CROWN (1736)).

Texas for over two decades.[3]  *See* 18 TEX. JUR. 3D CRIMINAL LAW: OFFENSES AGAINST THE PERSON §178 (Jan. 2025 update).  A wife is not a chattel and her consent to sex with her husband is not presumed.

Khamsini next contends that Angela, in fact, consented to have sex with him and that her testimony to the contrary is not credible.  According to Khamsini, he and Angela "had their unique love and sexual language" regarding consent that was misconstrued by the prosecution and the jury.  Khamsini points to Angela's testimony that, on occasions in the past when she did not want to have sex, Khamsini "guilted" her into it, and she would ultimately consent.

In contrast, Angela testified that, on this occasion, she never consented.  And the evidence shows that, not only did Angela tell Khamsini that he was "not going to f--- her," she also fought to get away from him and struck him with a curtain rod.  Angela also testified that she and Khamsini did not have an agreement that every time she refused him sex, she would later consent.

---

[3]     The 1973 Texas Penal Code provided that "the offense of rape is committed . . when a person . . . has sexual intercourse with a female not his wife without the female's consent."  *See* Act of 1973, 63rd Leg. P. 883, ch. 399, amended by Acts 1993, 73rd Leg., ch. 900, eff. Sept 1, 1994. The current version provides that "a person commits an offense if the person intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent."  *See* TEX. PENAL. CODE § 22.011(a)(1)(A). There is no spousal exception in the current statute.

A jury may credit the victim's account over the defendant's version of events on the issue of consent and find that the sexual acts in question were not consensual on this basis alone. *E.g.*, *Wilson v. State*, 473 S.W.3d 889, 897–99 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (stating victim's testimony that she did not consent was sufficient on its own to prove lack of consent, despite defendant's contrary testimony).

The Court of Criminal Appeals has observed that prosecutions for sexual assault are often *he said, she said* trials in which the jury must render a verdict based solely on the testimony of two witnesses who present diametrically opposed accounts of the events—unaided by any physical, scientific, or other corroborative evidence. *Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009).

In such cases, the credibility assessments of the victim and defendant are the exclusive prerogative of the jury. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). And we may not second-guess the jury in this regard. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Here, Angela's testimony that she did not consent to have sex with Khamsini is sufficient to prove the "without that person's consent" element of sexual assault. *See Wilson*, 473 S.W.3d at 897-99. The jury was entitled to believe Angela's testimony and to disbelieve Khamsini's version of the event. *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

Khamsini also argues that Angela's testimony that she called the police because he attempted to sexually assault her was not credible. He argues that Angela's motive for calling the police was that their daughter saw them during the altercation, and Angela used the event as a basis for a divorce. Again, the jury was entitled to believe Angela and to disbelieve Khamsini. We will not sit as a thirteenth juror to resolve issues of witness credibility. *See id.*

We thus conclude that the record contains sufficient evidence to support the jury's determination that Khamsini intended to sexually assault Angela and that he took preparatory steps to effectuate that purpose.

**Ineffective Assistance of Counsel**

Khamsini additionally maintains that his trial counsel rendered ineffective assistance because he did not (1) seek a mistrial when the court reporter was absent from the courtroom for two hours during deliberations, (2) object to the admission of the videotape of the attempted sexual assault, (3) seek a jury charge on a lesser-included offense, and (4) object to testimony "outside the record." We address each claim in turn.

### *A. Standard of Review*

The United States Constitution, Texas Constitution, and Texas Code of Criminal Procedure guarantee an accused the right to assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art.

11

1.051. As a matter of state and federal law, this right includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997).

To prevail on a claim of ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) counsel's performance fell below an objective standard of reasonableness and that (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A failure to make a showing under *either* prong of the *Strickland* test defeats a claim for ineffective assistance. 466 U.S. at 697; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Under *Strickland*'s first prong, we must look to the totality of the representation to determine the effectiveness of counsel—indulging a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. 466 U.S. at 689; *Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). We "must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to

12

prove a claim of ineffective assistance of counsel." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012).

Allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813–14. In most cases, a direct appeal is an inadequate vehicle for raising an ineffective-assistance claim because the record is undeveloped, and a silent record cannot adequately reflect the motives behind trial counsel's actions. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

When, as here, the record does not reveal the reasons for trial counsel's actions, we "will assume a strategic motivation if any can possibly be imagined." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Trial counsel should generally have an opportunity to explain his or her actions before we find the performance deficient. *Goodspeed*, 187 S.W.3d at 392. Without that opportunity, we should not find trial counsel's performance deficient "unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia*, 57 S.W.3d at 440).

In rare cases in which counsel's ineffectiveness is apparent from the record, an appellate court may address the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. But "the record must demonstrate that counsel's performance fell below an

13

objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.*

Under *Strickland*'s second prong, we must determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That an error had "some conceivable effect on the outcome" will not suffice. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). Rather, there must be a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt with respect to guilt. *Id.*

### B. Discussion

#### 1. Failure to Seek Mistrial

In his motion for new trial, Khamsini filed his own affidavit, in which he argued that, after the jury asked to see a certain portion of trial testimony, the court reporter was not available for over two hours to respond to the jury's request. The trial court instructed the jury to keep deliberating while they waited for the court reporter to return. When the court reporter returned after two hours, and the trial court was ready to read the requested testimony, the jury returned a guilty verdict before ever having re-heard the testimony it had requested earlier. Khamsini

14

argues that one of the jurors told his trial attorney that the jury was tired of waiting for the testimony and convicted him so they could go home. He further contends that had his trial counsel objected to the delay and moved for a mistrial on that basis, the outcome of the trial would have been different.

As noted earlier, there is no record from Khamsini's trial counsel about why did not request a mistrial. The failure of trial counsel to request a mistrial can only be an act of ineffective assistance of counsel if a mistrial should have been granted. *See Weinn v. State*, 281 S.W.3d 633, 641 (Tex. App.—Amarillo 2009), *aff'd*, 326 S.W.3d 189 (Tex. Crim. App. 2010).

Khamsini's claims that "had [his] trial counsel objected and moved for a mistrial due to the delay by the court reporter, the outcome of the trial would have been different." But Khamsini does not provide any argument or authority as to why the trial court would have been required to grant a mistrial had trial counsel made such a motion. Additionally, a trial counsel's decision not to seek a mistrial can be sound trial strategy[4], which is not rebutted by the silent record in this case. As a result, for this contention, Khamsini fails to satisfy the first prong of *Strickland*.

---

[4]    *See Fox v. State*, 175 S.W.3d 475, 489 (Tex. App.—Texarkana, pet. ref'd) (counsel's decision not to seek mistrial because it would draw attention to the judge's opinion of the case if denied was considered sound trial strategy).

### 2. Failure to Exclude Video Evidence

Khamsini also claims that his trial counsel was ineffective because he did not move to exclude the video evidence of the offense on Fourth Amendment grounds. Consent searches are an exception to the warrant requirement of both the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. ART. 1, § 9. Here, the record shows that Angela gave the video to police. Khamsini does not contend, and there is no evidence in the record, that Angela did not have actual or apparent authority to consent to the police's seizure of the video. When evidence is voluntarily produced, no search is conducted. *Munoz v. State*, 485 S.W.2d 782, 784 (Tex. Crim. App. 1972). Counsel is not ineffective for failing to object to admissible evidence. *Agbogwe v. State*, 414 S.W.3d 820, 835 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

### 3. Failure to Seek Charge on Lesser-Included Offense

Khamsini also contends that trial counsel was ineffective because he did not seek a jury charge on assault, which he contends is a lesser-included offense of sexual assault. This fails for two reasons.

First, Khamsini provides no analysis of the elements of the two offenses, and there is authority providing that assault causing bodily injury is not a lesser-

16

included offense of sexual assault.[5]  *See Mathis v. State*, 443 S.W.3d 391, 396–97 (Tex. App.—Austin 2014, no pet.).

Second, it can be a valid trial strategy to seek an acquittal on a greater charge rather than risk a guilty verdict on a lesser charge. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004); *Albert v. State*, 695 S.W.3d 721, 729 (Tex. App.—Houston [1st Dist.] 2024, pet. ref'd).  Because counsel's decision not to seek an instruction on assault may have resulted from trial strategy, and the record is silent on his reasoning, we will not find counsel ineffective.

### 4. Failure to Object to Testimony on Issues "not on the record"

Finally, Khamsini contends that trial counsel should have objected when the investigating deputy, Dishman, testified about matters that were not in the police report he prepared.  Khamsini argues that trial counsel "failed to object to the Deputy testifying to matters that were not on the record."

But Khamsini cites no authority, and we can find none, requiring an investigating officer to confine his testimony to matters included in the police report.  The record supports the conclusion that trial counsel used cross-examination to attack Dishman's testimony by suggesting that parts of his testimony were not true because they were not mentioned in his police report.

---

[5]     There are three different ways of committing an assault, but Khamsini does not argue about which type of assault charge counsel should have requested.  *See* TEX. PENAL CODE § 22.01(A)(1), (2), (3).

17

With a silent record, we cannot conclude that trial counsel's cross-examination technique was not permissible trial strategy precluding an ineffective-assistance claim.

## Conclusion

For all the reasons above, we affirm the trial court's judgment in all things.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).