

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00175-CR

---

RIGOBERTO CASTILLO ORDONEZ, APPELLANT

V.

THE STATE OF TEXAS

---

On Appeal from the 320th District Court
Potter County, Texas,
Trial Court No. 77,691-D-CR, Honorable Pamela Sirmon, Presiding

---

March 7, 2022

## MEMORANDUM OPINION

### Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Rigoberto Castillo Ordonez, was convicted by a jury of sexual assault and was sentenced to five years' confinement.[1]  On appeal, he asserts that (1) he was denied his Sixth Amendment confrontation rights because an unqualified interpreter was used; (2) his counsel was ineffective for failing to subpoena two law enforcement officers to appear at trial; and (3) the State's evidence was insufficient to convict for sexual

---

[1] *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A), (f) (second-degree felony).

assault.  We affirm the trial court's judgment.

***Background***

In August 2019, the State returned an indictment accusing appellant of intentionally or knowingly causing the penetration of the sexual organ of his live-in girlfriend, D.G., by inserting his penis in her sexual organ without her consent.  Prior to a jury trial, the State provided appellant with a list of prospective witnesses.  They included D.G., Officer Faustino Martinez, and Sergeant Terry Meck.  At trial and to assist appellant, Ana Nunez and Richard Perales were sworn in as English/Spanish interpreters.[2]

Despite having named three potential witnesses, the State only called D.G.  She testified that around December of 2016, she met appellant over Facebook and started a dating relationship with him.  In October 2017, appellant came from Phoenix to live with her in Amarillo.  D.G. knew he was married, but appellant had told her a divorce was forthcoming.  Within weeks, though, the relationship between D.G. and appellant soured.  He began calling her "stupid," "dumbass," "bitch," "good for nothing," and "all the bad words," according to her.  That resulted in D.G. wanting to separate from him because he "abused her a lot emotional and verbal for no reason" and threatened to kill her.

On June 22, 2018, D.G. returned home from work around 1:00 a.m.  She was tired and wanted rest.  Appellant arrived minutes later looking at her "kind of weird."  She asked him, "Why are you looking at me like that?"  Instead of responding verbally, he pinned her against the kitchen wall, slapped her face, pulled her hair, separated her legs, put his leg in between hers, and "rammed" her as she cried.  D.G. protested, begged him to stop,

---

[2] Nunez was sworn in prior to voir dire and Perales was sworn in during voir dire.  Two interpreters were appointed so they could rotate every half-hour.

2

and tried to push him away.  Upon freeing herself, she ran to her bedroom to call the police.  Before completing the call, however, appellant grabbed her phone and threw it.

Appellant next threw D.G. to the floor, told her that he was going to "fuck her up" and wanted sex.  She refused by telling him "no."  Nevertheless, he removed her pants, and inserted his penis into her vagina while she repeatedly told him "no."  The assault lasted approximately fifteen to twenty minutes.  Afterwards, she fell asleep on the floor, awoke at 7:00 a.m., and told appellant, "You have to go."  He refused, contending that he needed two weeks to provide notice at work.

Within twenty-four hours, D.G. told appellant's aunt, a friend, and one of her cousins about the assault.  Her sisters were told sometime later.  Yet, the event was not reported to the police until about eight months later, allegedly because she feared the reaction of her sons.

### Issue Three: Sufficiency of the Evidence

In his third issue, appellant asserts the State's evidence was insufficient to convict because (1) D.G.'s account of her sexual assault—both before and during the trial—was inconsistent, (2) her complaint was uncorroborated, and (3) no evidence indicated she was physically injured.  We consider this issue first because sustaining it would provide the greatest relief possible, i.e., acquittal, *Mixon v. State*, 481 S.W.3d 318, 322 (Tex. App.—Amarillo 2015, pet. ref'd), and, upon doing so, overrule it.

In assessing the legal sufficiency of the evidence to support a criminal conviction, reviewing courts must consider the evidence in a light most favorable to the jury's verdict, *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018), and determine whether the evidence and reasonable inferences therefrom would permit a rational juror to find the

3

essential elements of the crime beyond a reasonable doubt. *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). We apply that standard here.

Appellant's sufficiency challenge amounts to an attack on D.G.'s credibility. Although some inconsistencies may have existed in D.G.'s account of the incident, it was within the jury's sole purview to resolve them. *See Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) (credibility of both the complainant and the defendant is "a central, often dispositive issue" in sexual assault cases which are frequently "he said, she said" trials). Our obligation is to defer to the jury's resolution of them and its authority to weigh the evidence and draw reasonable inferences from it. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (stating that a reviewing court must defer to the jury's credibility and weight determinations because the jury is the sole judge of a witness's credibility and the weight to be given his testimony).

And, to reiterate, D.G. testified to appellant forcibly penetrating her vagina with his penis while she protested the act. This uncorroborated testimony was sufficient to support a conviction for sexual assault since she had told others of it within a year of its occurrence. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (stating that a conviction under Chapter 21, Section 20A.02(a)(3), (4), (7), or (8), Section 22.011, or Section 22.021 of the Penal Code is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred). That she may not have suffered bodily injury during the assault is inconsequential. This is so because bodily injury is not an element of the offense of sexual assault. *Mathias v. State*, 443 S.W.3d 391, 397 (Tex. App.—Austin 2014, no pet.). Thus, upon viewing the evidence

4

in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of sexual assault beyond a reasonable doubt.

### Issue One: Interpreter Qualifications and Accuracy

Appellant next asserts a hodge-podge of complaints about the use of an interpreter to translate D.G.'s testimony. We construe them as involving the need for an interpreter, the purported failure to swear in the second interpreter, the latter's qualifications, and the intermittent way in which the interpreter translated questions. So construing them, we overrule each.

We begin with the need for an interpreter. It concerned the complaining witness's ability to speak and understand English. The latter was her second language, while Spanish was her primary tongue. Because of this, the trial court appointed two translators. The trial court having appointed two, we reject the appellant's apparent insinuation that the appointment of an interpreter was needed. *See Balderas v. State,* 517 S.W.3d 756, 777 (Tex. Crim. App. 2016) (quoting *Miller v. State*, 177 S.W.3d 1, 5–6 (Tex. App.—Houston [1st Dist.] 2004, no pet.), and stating that the appointment of an interpreter for a material witness is required by both the Confrontation Clause within the United States Constitution and article I, section 10, of the Texas Constitution and must be implemented unless expressly waived if the trial judge is aware that the witness has difficulty understanding the English language).

Regarding the statutory qualifications of and administration of the oath to the second interpreter, appellant did not raise those complaints below. Thus, they were waived*. See, e.g.*, *Dat Tat Pham v. State*, No. 09-15-00460-CR, 2017 Tex. App. LEXIS 4923, at *5 (Tex. App.—Beaumont May 31, 2017, no pet.) (mem. op., not designated for

5

publication) (stating that once the trial court appoints an interpreter, the defendant must object at trial to preserve a complaint regarding the qualifications or competency of the interpreter); *Phommathep v. State*, No. 07-12-00503-CR, 2014 Tex. App. LEXIS 1526, at *7–8 (Tex. App.—Amarillo Feb. 11, 2014, no pet.) (mem. op., not designated for publication) (by failing to make a proper objection at trial, appellant waived any complaint that the trial court appointed the interpreter without making the findings required by section 57.002(e) on the record). Similarly, beyond our review are appellant's complaints about the accuracy of the interpreter's translation. *See Zhigang Wang v. State*, No. 09-17-00462-CR, 2019 Tex. App. LEXIS 8944, at *37 (Tex. App.—Beaumont Oct. 9, 2019, pet. ref'd) (mem. op., not designated for publication) (holding such complaints beyond review of an appellate court because they involve matters of fact); *Martins v. State*, 52 S.W.3d 459, 469 (Tex. App.—Corpus Christi 2001, no pet.) (stating the same).

As for the complaint about the translators only being utilized intermittently, the record illustrates that D.G. was conversant in English. She was asked, and she answered, many questions in that tongue. When a stumbling block was encountered, the interpreter then would intervene to either pose a question in Spanish or translate to English an answer uttered in Spanish.[3] And, most importantly, appellant did not object to that manner of proceeding. Never did he suggest to the court that his right to confront a witness required that the witness be examined only in Spanish via the interpreter. Nor did he suggest that her replies be made only in Spanish so the interpreter could reiterate them in English. Along with his absence of objections below, he cites us to no authority

---

[3] For instance, D.G. was asked a particular question. She responded: "I really don't know how to answer in English." That led to her being asked if she felt the "need" for an interpreter. Her response was: "Yeah, just for that question."

6

suggesting that once the trial court appoints an interpreter, that individual must interpret every question posed to, and every answer coming from, a witness generally conversant in English.

In situations involving the use of interpreters, the question is not whether the best means of interpretive services were employed. *Linton v. State*, 275 S.W.3d 493, 500 (Tex. Crim. App. 2009). Rather, it is whether the interpretative services actually employed were "constitutionally adequate such that the defendant could understand and participate in the proceedings." *Id.* And, an answer to that is influenced by a myriad of factors, such as the individual's understanding of the English language, the complexity of the pertinent law and its procedures, and the testimony. *Id.* Consequently, trial judges observing the individual's level of comprehension have wide discretion in determining the adequacy of interpretive services. *Id.* The trial court did just that here. It witnessed D.G.'s knowledge and comprehension of the English language, and both were rather extensive. So, it allowed or limited the use of an interpreter when she encountered obstacles. Appellant voiced no objection to that mode of proceeding, and we find none. Allowing use of the interpretive services in the manner that it did, as opposed to having the individual translate every question asked and every answer uttered, was not an abuse of discretion.[4]

### Issue Two: Ineffective Assistance of Counsel

Appellant next asserts that his counsel was ineffective for failing to issue subpoenas requiring Officer Martinez and Sergeant Meck to appear at trial. Allegedly, the oversight prevented him from crossing examining these officers to garner evidence illustrating inconsistencies in D.G.'s version of events. We overrule the issue.

---

[4] Appellant is mistaken in his claim the trial court failed to swear in one of the interpreters. The record reflects an oath was administered to both, as mentioned earlier.

7

An appellant claiming ineffective assistance of counsel bears the burden of proving by a preponderance of evidence that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the appellant. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. *Id.*

Again, appellant contends that the officers should have been subpoenaed and called to reveal multiple inconsistencies between D.G.'s trial testimony and her statements made to them. Presumably, that would have served to impeach her credibility. Yet, despite their absence from trial, appellant's counsel exposed D.G. to rigorous cross-examination. That included the comparison of her trial testimony to the statements she provided the officers. Moreover, appellant represented in his brief that counsel's effort "revealed multiple inconsistencies in [her] testimony and what she stated to police in her reporting of the incident." Thus, trial counsel did the very thing for which he is now being faulted; he revealed the inconsistencies. Counsel's failing to call additional witnesses to provide "cumulative impeachment evidence" does not establish constitutionally detrimental or deficient performance on his part. *See, e.g.*, *Lopez v. State,* No. 13-12-00076-CR, 2013 Tex. App. LEXIS 7824, at *11–12 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op., not designated for publication) (concluding that the appellant did not show prejudice "because the impeachment evidence was cumulative of impeachment evidence available for trial"). This is especially so given that other inconsistencies, if any, which could have been revealed went unmentioned by appellant.

8

***Court Fees***

When it has the necessary information in the record to do so, an appellate court has the power to sua sponte modify the judgment and bill of costs to make the record speak the truth. *Escobedo v. State*, No. 07-21-00220-CR, 2022 Tex. App. LEXIS 840, at *3 (Tex. App.—Amarillo Feb. 3, 2022, no pet.) (mem. op., not designated for publication) (involving modification of the judgment); *Church v. State*, No. 02-17-00049-CR, 2018 Tex. App. LEXIS 7302, at *5–6 (Tex. App.—Fort Worth Aug. 18, 2018, no pet.) (mem. op., not designated for publication) (involving modification of the judgment and bill of costs). Here, the bill of costs includes the assessment of a $100 "Child Abuse Prevention Fine." No fines were pronounced at trial or levied in the judgment.[5] Thus, the bill of costs will be modified to strike the assessment of this $100 fine.[6]

Having overruled each of appellant's issues, we affirm the trial court's judgment. We also modify the bill of costs by redacting the assessment of a $100 "Child Abuse Prevention Fine."

Brian Quinn
Chief Justice

Do not publish.

---

[5] The trial court pronounced that "[t]here will be no fine."

[6] To the extent that the bill of costs may be inaccurate in other aspects, we note that article 103.008 of the Texas Code of Criminal Procedure provides one an avenue of post-judgment relief.